UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-664-FDW
(3:13-cr-215-FDW-DCK-1)

| | | |
|---|---|---|
| KAMRAN REZAPOUR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner Kamran Rezapour's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion to Dismiss and Response to Motion to Vacate, (Doc. No. 3).

## I. BACKGROUND

**A. Petitioner obtains, markets, sells, and distributes erectile-dysfunction products that contained prescription drugs carrying identified risks, while representing to the public that the products were "100% safe and natural."**

Between 2009 and 2013, Petitioner owned and operated Nutrition for Health, Inc. and Mojo Risen, LLC, companies through which he sold male-enhancement and erectile-dysfunction drugs, including Mojo Risen, Mojo Sensation, and VajiVedic. (Crim. Case No. 3:13cr215-FDW-DCK-1, Doc. No. 35 at ¶ 7). Petitioner advertised these products as "dietary supplements" that were "herbal" and "100% safe and natural." (Id. at ¶¶ 6, 9-11). In fact, the products contained pharmaceutical and prescription compounds, including sildenafil, the active ingredient in the prescription drug, Viagra, and its chemical analog noracetildinafil, which required approval from the United States Food and Drug Administration to market and distribute. (Id. at

1

¶¶ 6, 13). Petitioner smuggled these compounds into the United States from China but did not list sildenafil, noracetildenafil, or any other prescription ingredient on the products' packaging or in the products' advertising material. (Id. at ¶¶ 13-14). To evade United States customs authorities and the FDA, Petitioner and his Chinese supplier falsely claimed that the imported shipments contained "paint products," "care products," and "gifts." (Id. at ¶ 15).

On both the products' packaging and in marketing information, including on the companies' websites, Petitioner represented that these products were safe and natural, stating, for example, that "Mojo Risen is a safe, revolutionary sexual formula for men that combines ancient Chinese school of thought and modern science to significantly support sexual stamina, performance and pleasure." (Id. at ¶ 10). Petitioner claimed on his websites that Mojo Risen was without "harsh and dangerous side effects," representing that the ingredients were "all natural," as opposed to the products of modern science, which had "yet to provide men with a sexual enhancement product that comes without a laundry list of harsh side effects." (Id. at ¶ 11). Similarly, Petitioner claimed on his website that VajiVedic was a "non-prescription supplement" containing "an all-natural proprietary blend of herbs." (Id. at ¶ 12). According to Petitioner's website, "when you take VajiVedic, you can banish any worries of the harsh, potential life-threatening side effects found with prescription sexual stimulants" because his "all-natural combination of herbs and other substances has no unwanted side effects." (Id.). In addition to including false claims such as these, Petitioner's products also did not bear the symbol "Rx only" on their labels, as is required for all prescription drugs. (Id. at ¶ 14).

After receiving the "sex material" from his Chinese supplier, Petitioner contracted with manufacturers in Michigan and Utah to encapsulate the smuggled ingredients according to Petitioner's formulas in order to produce Mojo Risen, VajiVedic, and other erectile-dysfunction

products.  (Id. at ¶ 16).  Petitioner then directed the manufacturers to send the encapsulated product to a packaging center in New York or to distribution centers maintained by Petitioner in Utah.  (Id. at ¶ 17).

Petitioner accepted customer orders through his websites and by telephone and received payment by both credit card and checks.  (Id. at ¶¶ 7-8, 18).  Petitioner delivered the product via the United States mail and commercial interstate carriers, including United Parcel Service.  (Id. at ¶ 8).  Petitioner also distributed his products to other wholesalers for re-distribution.  (Id. at ¶ 18).  Between January 2009 and April 2013, Petitioner received more than $4,900,000 in payments from consumers and wholesalers nationwide.  (Id., at ¶ 19).

In April 2013, federal agents executed a search warrant at Petitioner's home and business in Creston, North Carolina.  (WDNC Case No. 3:13MJ128, Doc. 1 at 2-3).  During their search of Petitioner's home, agents seized a .380 caliber pistol, hundreds of rounds of ammunition, gun-cleaning supplies, a rifle scope, and other firearm paraphernalia.  (Id. at 2-3).  One of Petitioner's employees reported that he saw Petitioner shoot a pistol on his property in 2012.  (Id. at 3-4).  Petitioner told agents that he was the only person who had access to his home, though he also told agents that he did not know how the firearm and ammunition got into his home or who owned them.  (Id.).

When agents searched Petitioner's home, he was a convicted felon, having been convicted of conspiracy to distribute LSD in the United States District Court for the Southern District of Texas in 1990 and of illegal investment or possession of cocaine in Harris County, Texas in 1989.  (Crim. Case No. 3:13cr215-FDW-DCK, Doc. No. 35 at ¶¶ 48-49).  Petitioner was also on parole following his release from the Texas Department of Criminal Justice, with his parole set to expire on January 10, 2018.  (Id. at ¶ 49).

3

**B. Petitioner pleads guilty to wire fraud and misbranding offenses, in exchange for which the Government dismisses an unrelated firearm charge.**

Two days after agents searched Petitioner's home and seized the pistol and ammunition, Petitioner was charged by criminal complaint with possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). (WDNC Case No. 3:13MJ128, Doc. No. 1 at 1). Four months later, Petitioner was charged by Bill of Information with wire fraud, 18 U.S.C. § 1343; and two counts of misbranding, 21 U.S.C. §§ 331(a) and 333(a)(2). (Crim. Case No. 3:13cr215-FDW-DCK, Doc. No. 14 at pp. 9-10). Specifically, the Bill of Information alleged that Petitioner participated in a scheme to defraud for the purpose of obtaining money and property through false and fraudulent representations posted on his website, on which he falsely stated that the ingredients of Mojo Risen were "100% safe and natural." (Id. at 9). With respect to the misbranding offenses, the Bill of Information alleged that Petitioner, intending to defraud and mislead, misbranded Mojo Risen and VajiVedic by employing labeling (1) that was false and misleading, (2) that did not bear the established name and quantity of each active ingredient; and (3) that failed to bear the symbol "Rx only" as required because they were prescription drugs. (Id. at 10).

On the same day the Bill of Information was filed, Petitioner entered into a plea agreement with the Government, in which he agreed to plead guilty to the charged offenses. (Id., Doc. No. 15 at ¶ 1). In exchange, the Government agreed to dismiss the complaint charging Petitioner with being a felon in possession of a firearm. (Id. at ¶ 2). Petitioner declined to follow through with his guilty plea, however, eventually seeking and obtaining new counsel. (See id., Doc. No. 51 at p. 4). A month later, Petitioner was indicted by a federal grand jury and charged with possession of a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Id., Doc. No. 1).

Represented by his new counsel, Petitioner entered into a second plea agreement with the Government, again agreeing to plead guilty to the wire-fraud and misbranding offenses alleged in the Bill of Information. (Id., Doc. No. 26 at ¶ 1). In exchange for Petitioner's guilty plea, the Government agreed to dismiss the felon-in-possession indictment against him. (Id. at ¶ 2). The parties stipulated in their agreement that Petitioner's offense resulted in a loss of more than $2.5 million but less than $7 million, that there were more than 250 victims of Petitioner's scheme to defraud, and that the offense conduct involved a conscious or reckless risk of death or serious bodily injury. (Id. at ¶ 7). Additionally, Petitioner agreed, "in exchange for the concessions made by the United States," to waive his right to appeal his conviction or sentence or to contest his conviction or sentence in a motion to vacate under U.S.C. § 2255, except on the bases of ineffective assistance of counsel and prosecutorial misconduct. (Id. at ¶¶ 19-20). The parties also filed a Factual Basis consistent with the description of Petitioner's offense conduct recited above. (Id., Doc. No. 25).

This Court, Magistrate Judge David C. Keesler presiding, conducted a colloquy in accordance with Federal Rule of Criminal Procedure 11, during which Petitioner affirmed that he understood the charges against him and the maximum penalties he faced. (Id., Doc. No. 51 at p. 15). Petitioner also affirmed that he was guilty of the crimes to which he was pleading guilty. (Id. at p. 18). Petitioner also affirmed that, as part of the parties' agreement, he agreed to waive his right to appeal, except on the bases of ineffective assistance of counsel or prosecutorial misconduct. (Id. at pp. 24, 29). When Petitioner was asked whether he was satisfied with the services of his counsel, Petitioner replied that they had "done an outstanding job to help [him] understand exactly what [he was] up against and [he] really appreciate[d] what [they had] done."

(Id. at p. 30).  At the conclusion of the Rule 11 colloquy, the magistrate judge found that Petitioner's guilty plea was knowingly and voluntarily entered.  (Id. at p. 33).

The probation office prepared a presentence report ("PSR"), calculating a total offense level of 30, a criminal-history category of III, and an advisory Sentencing Guidelines range of between 121 and 151 months in prison.  (Id., Doc. 31 at ¶¶ 43, 53, 77).  Petitioner objected to certain of the PSR's factual and legal conclusions, particularly arguing that his criminal-history category should be reduced to category II.  (Id., Doc. No. 33 at 1).  The Government agreed, and the final PSR incorporated that change, reducing Petitioner's advisory Sentencing Guidelines range to between 108 and 135 months in prison.  (See id., Doc. No. 35 at ¶¶ 53, 77; id., Doc. No. 42 at 7).

This Court, the Honorable Frank D. Whitney presiding, conducted Petitioner's sentencing hearing and began by asking Petitioner whether the answers he provided during his Rule 11 colloquy were true and correct, in response to which Petitioner replied, "Yes."  (Id., Doc. No. 42 at 3).  Petitioner affirmed that he was guilty of the three offenses to which he was pleading guilty, and this Court affirmed the acceptance of his guilty plea as knowing and voluntary. (Id. at 4-5).  Based on the Factual Basis filed by the parties and Petitioner's admission of guilt, this Court found a factual basis to support Petitioner's guilty plea.  (Id. at 6).

Both parties recommended a sentence at the bottom of the range advised by the Sentencing Guidelines.  (Id. at 8, 14, 16).  After considering the parties' joint recommendation as to Petitioner's sentence, this Court accepted the recommendation and sentenced Petitioner to 108 months in prison.  (Id. at 26).  At the Government's request this Court also dismissed the indictment charging Petitioner with possession of a firearm by a convicted felon.  (Id. at 32).

Petitioner appealed, arguing that there was insufficient evidence to support his conviction for wire fraud and that his trial counsel provided constitutionally deficient representation by failing to properly investigate the facts of Petitioner's case. (Fourth Circuit Case No. 15-4236, Doc. No. 51). The Fourth Circuit affirmed this Court's judgment, holding that the Factual Basis to which Petitioner agreed adequately supported his guilty plea and that there was no evidence of ineffective assistance of counsel in the record. United States v. Rezapour, 648 F. App'x 325, 326-27 (4th Cir. 2016) (unpublished).

Petitioner timely filed the present motion to vacate on November 14, 2017, arguing that this Court erred when it found that his offense involved 250 or more victims and that trial counsel provided constitutionally deficient representation when he failed to challenge the charging affidavit and the determination that Petitioner's offense involved 250 or more victims. (Doc. No. 1). The Government filed its motion to dismiss and its response in opposition on January 29, 2018. (Doc. No. 3). Petitioner filed his Response to the Government's Motion to Dismiss on March 19, 2018. (Doc. No. 8).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**A. Petitioner's Challenge to the Application of the Sentencing Guidelines.**

7

In his first claim, Petitioner seeks relief based on this Court's offense-level determination related to the number of victims of Petitioner's offenses. In the parties' plea agreement, Petitioner explicitly waived his right to challenge his sentence in a post-conviction proceeding. It is well established that "a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Moreover, there is "'no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in [a] plea agreement.'" Id. (quoting DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000) (brackets in original)). Whether a waiver is knowing and voluntary is evaluated based on the totality of the circumstances, United States v. Manigan, 592 F.3d 621, 627 (4th Cir. 2010), "'including the background, experience and conduct of the accused,'" United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)); see also United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir. 1995). Moreover, "[g]enerally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." United States v. Thornsbury, 707 F.3d 522, 528 (4th Cir. 2012). Additionally, it is well settled that statements made by a defendant during a Rule 11 proceeding constitute strong evidence of the voluntariness of a plea. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

Here, the record establishes that Petitioner knowingly and voluntarily waived his right to challenge his sentence in a post-conviction proceeding filed pursuant to 28 U.S.C. § 2255, except on the bases of ineffective assistance of counsel or prosecutorial misconduct. This Court conducted a thorough Rule 11 colloquy, during which Petitioner affirmed that he understood that

8

he was waiving both his right to appeal his sentence and his right to challenge his conviction or sentence in a post-conviction proceeding, and Petitioner does present any evidence that his plea was either unknowing or involuntary. Additionally, Petitioner's claim of sentencing error, which is not based on either ineffective assistance of counsel or prosecutorial misconduct, falls within the scope of his post-conviction waiver, and all of the relief he seeks constitutes post-conviction relief. Accordingly, Petitioner's claim of sentencing error will be dismissed.

### B. Petitioner's claims of ineffective assistance of counsel.

To establish ineffective assistance of counsel, Petitioner has the burden to prove that the performance of his trial counsel fell below an objective standard of reasonableness, judged "from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). He must also establish prejudice, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Stated another way, Petitioner must show a reasonable probability of a different result. Id. at 694; Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016).

As the Supreme Court has made clear, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Accordingly, "the burden to 'show that counsel's performance was deficient' rests squarely on the defendant," and the placing of any burden of proof on the government "turn[s] that presumption on its head." Id. (quoting Strickland, 466 U.S. at 690).

In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). To that

9

end, a petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). The likelihood of a different result must be "substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

**1. Representation related to number-of-victims enhancement.**

Petitioner first asserts that counsel provided ineffective assistance "concerning" the offense-level enhancement related to the number of victims. (Doc. 1 at 5). Petitioner notes that "according to [his presentence report], there were only 238 victims," seven victims shy of the 250 victims required to support the six-offense-level increase under Sentencing Guidelines § 2B1.1(b)(2)(C).[1] (Id. at 4).

Assuming that Petitioner believes trial counsel provided constitutionally deficient representation because counsel failed to object to a six-offense-level enhancement based on 250 victims, this claim fails because Petitioner admitted in the written Factual Basis supporting his plea and in his plea agreement that his offense involved at least 250 victims. See (Crim. Case No. 3:13cr215, Doc. No. 25 at p. 3; Doc. No. 26 at ¶ 7(b); Doc. No. 51 at pp. 21, 29).

---

[1] Petitioner's offense-level calculations were determined based on the 2014 edition of the United States Sentencing Commission Guidelines Manual. (Crim. Case No. 3:13cr215, Doc. No. 35 at ¶ 30). Section 2B1.1(b)(2)(C) was amended in 2015 and now provides for a six-level offense-level increase where the defendant's offense resulted in "substantial financial hardship to 25 or more victims." U.S.S.G. § 2B1.1(b)(2)(C) (2016).

10

Petitioner suggests that counsel should have objected to the six-level enhancement because his presentence report identified only 238 victims. But the presentence report identified only those victims who claimed a loss as a result of Petitioner's offenses. The list does not purport to be a list of all of Petitioner's victims, just the victims who took the time to identify themselves and present a claim of loss to the probation office. Particularly given the type of drugs Petitioner was selling and the possibility that victims could not found, this Court could reasonably conclude that not all of Petitioner's victims made claims of loss. Additionally, the presentence report stated that the offense involved at least 250 victims—a statement that would not make sense if the list of victims was a comprehensive list of Petitioner's victims and not just victims who had asserted a claim of loss. (<u>Id.</u>, Doc. No. 35 at ¶ 21). Because Petitioner has not shown that his offense involved fewer than 250 victims or that trial counsel provided deficient representation when he failed to object to the number-of-victims enhancement, this claim fails.

**2. Failure to object to challenge charging affidavit.**

Petitioner next asserts that trial counsel improperly "failed to challenge the charging affidavit by the government." (Doc. No. 1 at 4). Petitioner does not identify the "charging affidavit" that he believes should have been challenged or in what way it was deficient. Rule 2 of the Rules Governing Section 2255 Proceedings requires that a movant "specify all the grounds for relief" and "state the facts supporting each ground." Because Petitioner has not explained what affidavit he is referring to or how it was deficient, this claim fails as a matter of law. The Government also notes that, assuming Petitioner is referring to the affidavit supporting the criminal complaint through which he was originally charged with being a felon in possession of a firearm, the grand jury later indicted Petitioner based on its own determination of probable cause. In sum, this second ineffective assistance of counsel claim fails.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**. To this extent, the Government's Motion to Dismiss and Response to Motion to Vacate, (Doc. No. 3), is **GRANTED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 18, 2018

Frank D. Whitney
Chief United States District Judge